Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50326 | **DATE** | 8/31/2004 |
| **CASE TITLE** | ATT Systems Co., et al vs. Tylman, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' Motion to Disqualify/ Defendants' Motion for Sanctions

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Order, Plaintiffs' Motion to Disqualify and Defendants' Motion for Sanctions are denied. Defendants are ordered to file an affidavit of Ronald Guild with the court within seven days of the receipt of this Order and are directed to appoint trial co-counsel in this matter.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 9-1-04 date docketed | 42 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/31/2004 date mailed notice | |
| AM | courtroom deputy's initials | 2004 AUG 31 PM 4:07 | GG mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ATT SYSTEMS CO., BERNARD SUPPELAND; )
CORNELLIER FIREWORKS CO., LTD.; )
ERIC NIEHAUS, FRANK CHELI; NITA )
CHELI; HAL E. ADAMS; HARRY )
THEODORE; KMC ASSET MANAGEMENT )
CO.; R. ELLEN ENGSTROM; SIDLA )
COMPANY; STAHELIN PARTNERS )
DUPAGE CORP. CENTER; STEVE MILLER )
and WENDY MILLER; TECHTONICS )
INTERNATIONAL; THOMAS SIMMONS; )
WESLEY HAYNES; and KENTON TYLMAN, )
)
    Plaintiffs, )
)
v. ) Case No. 03 C 50326
)
VINCENT R. TYLMAN, PATRICIA B., )
TYLMAN, and THE NAMLYT TRUST, ) P. Michael Mahoney
)
    Defendants. )

## Memorandum Opinion and Order

Plaintiffs filed a seven-count Amended Complaint against Defendants alleging violations of the Securities Act of 1933 and 1934, RICO violations, unjust enrichment, civil conversion, breach of fiduciary duty and/or breach of duty to act in good faith, and intentional or negligent misrepresentation. Plaintiffs have moved to disqualify Defendants' counsel for conflict of interest. For the following reasons, Plaintiffs' Motion to Disqualify and Defendants' corresponding Motion for Sanctions are denied.[1]

## Background

---

[1] Pursuant to 28 U.S.C. §636(c) and Federal Rule of Civil Procedure 73, all the parties voluntarily consented to the Magistrate Judge.

1

For the limited purposes of this motion, the court accepts as true the background facts alleged in Plaintiffs' Third Amended Complaint. By doing so, the court makes no judgment about the actual truth or accuracy of facts alleged in Plaintiffs' Complaint. Plaintiffs are a group of investors who purchased units of interest in Sci-Tech Buildings Systems ("Sci-Tech"). They claim they were induced to purchase their interests because of fraudulent misrepresentations made by Defendants, Vincent ("Vince") and Patricia ("Patricia") Tylman. Sci-Tech was apparently created in 1996 by Ken Tylman ("Ken"), Ed Aldis ("Ed"), and Vince. At that time, the company was known as ATT Building Systems ("ATT"). At some point in 1997 or 1998, the company changed its name to Sci-Tech.

A business meeting was called to discuss the future structure and goals of ATT on April 1, 1997. Ed, Ken, and Vince attended this meeting. Also in attendance were Rachael Aldis (Ed's daughter) and Ronald Guild (present counsel for the Defendant). The capacity in which Ronald Guild attended the 1997 meeting is in dispute. Plaintiffs, Ken and Ed, allege that Ronald Guild attended the meeting to advise on legal issues concerning the structure of the company. Defendant, Vince, however, claims that no attorney-client relationship existed between himself or any company in which he had an interest prior to October 2001. Attorney Guild, himself, denies providing any legal counsel at the 1997 meeting.[2] The minutes of the meeting appear to show those in attendance assigning areas of responsibility for tasks to be completed on behalf of the company. Relevant to this case, the task of "patent work" was assigned to Vince, and the task of organizing company papers, by-laws, resolutions, minutes, and buy-sell agreements was

---

[2]Though affidavits were filed on behalf of Ken, Ed, and Vince regarding this matter, no affidavit of Ronald Guild has been filed with this court.

assigned to Ronald Guild and Ken.[3]

In 1999, Vince obtained patents ("the patents"), which are the basis of this lawsuit, and allegedly was to assign the patents to Sci-Tech. In July of 1999, Vince drafted a document detailing new lines of expense for Sci-Tech in the form of royalty payments to be paid from Sci-Tech to himself. These royalty payments to Vince were allegedly never discussed with Ken or Ed, but were inadvertently later discovered. Also in 1999, Vince employed a law firm to file the articles of incorporation necessary to create Sci-Tech Building Systems, LLC. The original Articles of Incorporation on file with the Secretary of State of Nevada aver that they were prepared by Vivien K. Chang, Attorney at law, Jones Law Group, PLLC.

In January of 2000, Vince applied for and received a federally-funded $80,000.00 company loan for Sci-Tech. The application for this loan stated that Sci-Tech owned the patents. In March of 2000, Vince led a seminar for potential customers and investors of Sci-Tech and represented to all attendees that Sci-Tech owned the patents.[4] That same year, Ken and Ed discovered that Vince was receiving 7% royalty payments from Sci-Tech for the use of the patents. Ken and Ed confronted Vince who then suggested that the amount of the royalty payments be reduced to 3½% – but no royalty payments were ever approved. During the following summer, disputes escalated between Ken, Vince, and Ed about (1) Vince and Patricia's

---

[3]Guild denies being charged with any responsibility at the meeting and denies ever advising Ken on matters pertaining to ATT's company structure. Besides meeting minutes and affidavits, no other evidence has been presented to this court establishing that Guild took on responsibilities to provide ATT legal services.

[4]In August of 2001, Vince applied for and received another federally-funded company loan for Sci-Tech. The application for this $40,000.00 loan also stated that Sci-Tech owned the patents.

"covert plan" to receive royalty payments for Sci-Tech's use of Vince's patents, then held by Namlyt; (2) Vince's insistence that Ken and Ed reduce their units of interest in Sci-Tech; and (3) the failure to resolve issues or make approvals through the use of board meetings as required in Sci-Tech's operating agreement.

Both Ken and Vince began to seek legal counsel about Sci-Tech and the problems detailed above in the Fall of 2001. After a meeting of shareholders in which Vince was removed as a manager of Sci-Tech and a resolution was passed that Sci-Tech would assert its right to possess the patents and take legal action to recover the patents, Vince e-mailed each Sci-Tech investor informing them that Ronald Guild would represent him regarding the patent dispute on November 6, 2001.

In March of 2002, Sci-Tech filed a complaint against Vince and Patricia, as co-trustees of Namlyt, to take ownership of the patents. Plaintiffs now claim that they have suffered damages in the amount of their initial investments and to the amount of possible business loss in excess of $800,000.00 because of the actions of Vince, Patricia, and Namlyt. The issue of a possible conflict of interest in Ronald Guilds's representation of Vince was formally raised by Plaintiffs in a letter to Guild dated November 17, 2003. The letter demanded that Guild immediately remove himself as counsel for the Defendants due to the conflict of interest arising from the 1997 meeting. Plaintiffs, allegedly receiving no reply, moved to disqualify Ronald Guild's representation of Defendants in this court on July 12, 2004.

## Discussion

Plaintiffs have asserted two issues in their motion to disqualify Ronald Guild as counsel for the Defendant. First, they pose conflict of interest concerns due to the 1997 pre-incorporation

meeting of ATT. Second, they raise as an issue the fact that Defendants' attorney, Ronald Guild, may be a necessary witness in the case at hand. Each issue will be addressed in turn.

A.  **Conflict of Interest**

Under the Rules of Professional Conduct for the Northern District of Illinois, conflict of interest questions are "primarily the responsibility of the lawyer undertaking the representation." LR83.51.7, Comments. A court may, however, address a conflict of interest issue if there is reason to believe an attorney has failed to observe his or her responsibilities under the Rules. Id. According to Local Rule 83.51.9, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents."

Plaintiffs in this case claim to have been previously represented by Defendants' attorney on a matter substantially related to the matters of this case, and Plaintiffs deny that they have given consent. In the Seventh Circuit, the relevant test for disqualification matters is the three-part "substantial relationship" test. Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221, 224 (7th Cir. 1978). First, the court "must make a factual reconstruction of the scope of the prior legal representation." Id. Second, the court looks to see "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." Id. Finally, the court decides if the "information is relevant to the issues raised in the litigation pending against the former client." Id. Plaintiffs bear the burden in this case to raise facts establishing each prong of the Westinghouse test. See Id.

Plaintiffs argue that Guild's presence at the 1997 ATT meeting is enough for the court to

reconstruct a prior legal representation because it was reasonable for Ken and Ed to infer that Mr. Guild was present as legal counsel. In support of this, they submit the meeting minutes in which Guild is mentioned and the affidavits of Ken and Ed stating they believed Guild to be present as legal counsel. As to the second Westinghouse prong, Plaintiffs assert that it is also reasonable to infer that confidential information would have been discussed at the business meeting that would have been conveyed to a lawyer representing the business. Finally, in support of the third prong, Plaintiffs contend that the business information discussed above in prong two is relevant to this case because the case alleges racketeering by means of a scheme or artifice of deceit, which Plaintiffs allege extended as far back as the 1997 meeting.

Defendants vehemently argue that Plaintiff has failed to provide any material upon which to establish any element of the Westinghouse test. Specifically, Defendants argue that Plaintiff fails to meet the first prong of Westinghouse because Plaintiff did not submit any evidence that Guild performed any legal services for Ken, Ed, or ATT. As to the meeting minutes, Defendants argue that at most, it speaks to a possible future legal meeting between Guild and Ken regarding corporate structure, but they deny that any such meeting took place. In support of this argument, Defendants submit the articles of incorporation of Sci-Tech which show that they were not prepared by Ronald Guild.

Defendants also argue that Plaintiffs cannot establish the second prong of the Westinghouse test because they have not established that any confidential matter was discussed, as the 1997 meeting was fairly informal. Finally, Defendants argue that Plaintiffs cannot establish prong three because business information discussed at the 1997 meeting is not related to any issue pending before this court.

The court agrees that Plaintiff has failed to provide facts sufficient to survive the three pronged <u>Westinghouse</u> test. From the facts alleged, the court can neither reconstruct the scope of prior legal representation, nor infer that any prior legal relationship existed. However, the court notes the failure of Defendants to attach an affidavit of attorney Ronald Guild to its Response to Plaintiffs' Motion to Disqualify. If Guild will file an affidavit with the court confirming the representations made in Defendants' Brief, the court will deny Plaintiff's Motion to Disqualify.

**B.     Lawyer as Witness**

Plaintiffs also raise in support of their Motion to Disqualify Defendants' attorney the potential need to call attorney Ronald Guild as a witness. However, disqualification on the ground that an attorney is also a witness is not mandatory. Rather, the advocate-witness rule "merely vests the trial court with discretion to determine whether counsel may appear as a witness without withdrawing from the case." See <u>United States v. Morris</u>, 714 F.2d 669, 671 (7th Cir. 1983).

Specifically, under Local Rule 83.53.7(b), a testifying attorney not called on behalf of a client may continue in trial "unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client." However, in exercising its discretion, the court should also examine all pertinent ethical rules, consider the purpose of the rules, and decide if the circumstances require the withdrawal of a testifying lawyer.[5] Furthermore, without at least one named co-counsel, the attorney-as-witness issue presents practical road blocks to the efficient administration of justice. Should the need to question the attorney/witness arise at trial,

---

[5]For example, the court should consider disqualification if there is a risk that an attorney will not be an objective witness, if the trier of fact will confuse the roles of advocate and witness, or if the dual representation creates an appearance of impropriety.

another attorney must be present to conduct the questioning.

Plaintiffs argue that Ronald Guild may be a necessary witness in the present case because he has a long standing relationship with Vince and because of his alleged involvement with the procurement of the patents at issue in this case. Further, the affidavit of Ken Tylman states that Ron Guild will be called as a witness to matters that occurred around August 2001, relating to an arbitration agreement between the parties and a public sale of the patents. Guild, however, denies any involvement with the patents or their procurement, and further states that he has "absolutely no reason to believe that he might ever be a witness."

At this juncture in this case, it is not clear that Ronald Guild would be a necessary witness. The court finds it would be untimely to take any action to disqualify Defendants' attorney. However, to head off any delay in this case due to existing or potential conflict of interest problems, the court directs Defendants to name trial co-counsel in this matter within seven days of the receipt of this Order.

C. **Sanctions**

In response to Plaintiffs' Motion, Defendants filed a Motion for Sanctions pursuant to 28 U.S.C. § 1927 asserting that Plaintiffs had "multiplied the proceedings in the case unreasonably and vexatiously." Based on the foregoing, this motion is denied.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion to Disqualify and Defendants' Motion for Sanctions are denied. Defendants are ordered to file an affidavit of Ronald Guild with the court and are directed to appoint trial co-counsel in this matter.

ENTER:

*P. Michael Mahoney* (signature)

P. MICHAEL MAHONEY, MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

DATE: 8/31/04