Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50326 | **DATE** | 10/13/2004 |
| **CASE TITLE** | ATT Systems Co. et al vs. Tylman, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, Defendants' Motion to Strike is denied and Defendants' Motion to Dismiss is denied in part and granted in part. Plaintiffs are given seven days to file an amended complaint containing correct citations, while Defendants are directed to **answer** Plaintiffs' Complaint within twenty-one days thereafter.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 10-14-04 date docketed | 47 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| ✓ | Copy to judge/magistrate judge. | 10/13/2004 date mailed notice | |
| AM | courtroom deputy's initials | GG | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ATT SYSTEMS CO., BERNARD SUPPELAND; )
CORNELLIER FIREWORKS CO., LTD.; )
ERIC NIEHAUS, FRANK CHELI; NITA )
CHELI; HAL E. ADAMS; HARRY )
THEODORE; KMC ASSET MANAGEMENT )
CO.; R. ELLEN ENGSTROM; SIDLA )
COMPANY; STAHELIN PARTNERS )
DUPAGE CORP. CENTER; STEVE MILLER )
and WENDY MILLER; TECHTONICS )
INTERNATIONAL; THOMAS SIMMONS; )
WESLEY HAYNES; and KENTON TYLMAN, )
)
    Plaintiffs, )
)
v. ) Case No. 03 C 50326
)
VINCENT R. TYLMAN, PATRICIA B., )
TYLMAN, and THE NAMLYT TRUST, ) P. Michael Mahoney
)
    Defendants. )

## Memorandum Opinion and Order

Plaintiffs filed a seven-count Amended Complaint against Defendants alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, RICO violations, unjust enrichment, civil conversion, breach of fiduciary duty and/or breach of duty to act in good faith, and intentional or negligent misrepresentation. Defendants have moved to strike and dismiss Plaintiffs' Second Amended Complaint. For the following reasons, Defendants' Motion to Strike is denied and Defendants' Motion to Dismiss is denied in part and granted in part.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all of the parties voluntarily consented to the Magistrate Judge.

1

## Background

For the limited purposes of this motion, the court accepts as true the background facts alleged in Plaintiffs' Second Amended Complaint. By doing so, the court makes no judgment about the actual truth or accuracy of facts alleged in Plaintiffs' Complaint. Plaintiffs are a group of investors who purchased units of interest in Sci-Tech Buildings Systems ("Sci-Tech"). They claim they were induced to purchase their interests because of fraudulent misrepresentations made by Defendants, Vincent ("Vince") and Patricia ("Patricia") Tylman. Sci-Tech was apparently created in 1996 by Ken Tylman ("Ken"), Ed Aldis ("Ed"), and Vince. At that time, the company was known as ATT Building Systems ("ATT"). At some point in 1997 or 1998, the company changed its name to Sci-Tech.

A business meeting was called to discuss the future structure and goals of ATT on April 1, 1997. Ed, Ken, and Vince attended this meeting. The minutes of the meeting appear to show those in attendance assigning areas of responsibility for tasks to be completed on behalf of the company. The task of "patent work" was assigned to Vince, while Ken was to work with an attorney on the company structure, and Ed was to work on product development.

In 1999, Vince obtained patents ("the patents"), which are the basis of this lawsuit, and allegedly was to assign the patents to Sci-Tech. In July of 1999, Vince drafted a document detailing new lines of expense for Sci-Tech in the form of royalty payments to be paid from Sci-Tech to himself. These royalty payments to Vince were allegedly never discussed with Ken or Ed, but were inadvertently later discovered. Also in 1999, Vince employed a law firm to file the

articles of incorporation necessary to create Sci-Tech Building Systems, LLC.

In January of 2000, Vince applied for and received a federally-funded $80,000.00 company loan for Sci-Tech. The application for this loan stated that Sci-Tech owned the patents. In March of 2000, Vince led a seminar for potential customers and investors of Sci-Tech and represented to all attendees that Sci-Tech owned the patents.[2] That same year, Ken and Ed discovered that Vince was receiving 7% royalty payments from Sci-Tech for the use of the patents. Ken and Ed confronted Vince who then suggested that the amount of the royalty payments be reduced to 3½% – but no royalty payments were ever approved. During the following summer, disputes escalated between Ken, Vince, and Ed about (1) Vince and Patricia's "covert plan" to receive royalty payments for Sci-Tech's use of Vince's patents, then held by Namlyt Trust; (2) Vince's insistence that Ken and Ed reduce their units of interest in Sci-Tech; and (3) the failure to resolve issues or make approvals through the use of board meetings as required in Sci-Tech's operating agreement.

In January of 2001, Vince Tylman allegedly sent additional fund-raising letters to Plaintiffs, which asserted that Sci-Tech held the patents. In February of 2001, Sci-Tech was busy marketing its product to contractors and developers at the World Concrete Show. By August 2001, problems between the company founders further multiplied when Vince allegedly hired a new CEO for Sci-Tech without permission and continued to insist that Ken and Ed transfer their interest in Sci-Tech to him.

Both Ken and Vince began to seek legal counsel about Sci-Tech and the problems

---

[2]In August of 2001, Vince applied for and received another federally-funded company loan for Sci-Tech. The application for this $40,000.00 loan also stated that Sci-Tech owned the patents.

detailed above in the Fall of 2001. At a September 2001 company meeting, Ken addressed the possibility that Vince's representations to investors that Sci-Tech held the patents when they were actually held by Vince constituted a potential securities violation. Following this meeting, Vince was removed as a manager of Sci-Tech and a resolution was passed that Sci-Tech would assert its right to possess the patents and take legal action to recover the patents. In response, Vince e-mailed each Sci-Tech investor informing them that Ronald Guild would represent him regarding the patent dispute.

In March of 2002, Sci-Tech filed a complaint against Vince and Patricia, as co-trustees of Namlyt, to take ownership of the patents. Vince and Patricia, as trustees of Namlyt Trust, entered into an arbitration agreement settling the parties' dispute, but Vince and Patricia allegedly defaulted on the agreement. Plaintiffs, in their current suit as individual investors, now claim that they have suffered damages in the amount of their initial investments and to the amount of possible business loss in excess of $800,000.00 because of the misrepresentation and fraudulent actions of Vince, Patricia, and Namlyt.

Plaintiffs' First Amended Complaint was dismissed on July 15, 2004, with leave to file a Second Amended Complaint. The court found that Plaintiffs' First Amended Complaint failed to comply with the Federal Rules of Civil Procedure 8(a), 8(e), 9(b), and 10(b). The court's Opinion and Order also called into question the sufficiency of Plaintiffs' cited statutory authority. Plaintiffs filed a Second Amended Complaint on July 29, 2004.

## Discussion

Defendants have moved to Strike and Dismiss Plaintiffs' Second Amended Complaint. First, they argue that the Second Amended Complaint again violates Federal Rules of Civil Procedure 8, 9, and 10. Second, they move to Dismiss the Complaint, alleging that Plaintiffs' statutory authority is either repealed, mis-cited, and/or unable to be located. Defendants also claim that Plaintiff lacks standing to bring any action based on any cause of action Sci-Tech may or may not have against any Defendant because no injury separate and distinct from the alleged losses suffered by Sci-Tech have been plead. The court will first address Defendants' Motion to Dismiss.

### A.     Motion to Dismiss

The court may dismiss a complaint for failure to state a claim upon which relief may be granted if it appears the plaintiffs cannot prove a set of facts entitling them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In considering such a motion, the court must view the allegations in the complaint in the light most favorable to the plaintiffs. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). The Federal Rules also require that pleadings be construed so as to do substantial justice. Fed. R. Civ. P. 8(f). Thus, the courts will not construe pleadings hyper-technically.

Plaintiffs' Count One is labeled as "Violation of the Securities Act of 1933 § 12, 15 U.S.C. §77(l)." Defendants' sole response to Plaintiffs' Count One is that 12 U.S.C. §77 has been repealed. Indeed, *12* U.S.C. §77 has been repealed, but this is beside the point as Plaintiffs

cite *15* U.S.C. §77.³ There has also been some confusion in past pleadings because Plaintiffs appear to cite the Securities Act as 15 U.S.C. §77(1) instead of the citation the court presumes Plaintiffs are referring to, 15 U.S.C. §77*l*. This mistake is easily recognizable because 15 U.S.C. §77(1) is entitled "Discrimination against Neutral Americans at Time of War." 15 U.S.C. §77*l*, however, is entitled "Civil Liabilities Arising in Connection with Prospectuses and Communications." Because Plaintiffs' Count One closely follows the statutory language of 15 U.S.C. §77*l*, the court presumes Plaintiffs meant to state a claim under §77*l*, and grants Plaintiffs seven days from the date of this Order to file an amended complaint properly citing statutory authority.

The parties also run into citation troubles with Plaintiffs' Second Count, "Violation of the Securities Act of 1934 § 10(b), 15 U.S.C. §78j(b)." Defendants responded to Count Two with one objection, stating "Defendants are unsure where to find §10(b) under the Securities Exchange Act of 1934." The court itself had no difficulty locating the proper statute at 15 U.S.C. §78j(b) and the proper SEC Rule 10b-5, promulgated under 17 C.F.R. § 240.10b-5. While Plaintiffs omitted a citation to the SEC Rule, the citation to the proper statute and the plethora of case law on §10(b) should have led Defendants directly to the rule. Indeed, Defendants cite the court to 15 U.S.C. §78j and 17 C.F.R. § 240.10b-5 on page four of their own Brief in Support of Defendants' Motion to Dismiss Second Amended Complaint. Because the court has resolved the preliminary matter of Defendants' inability to find the applicable laws for Count Two, the court denies Defendants' Motion to Dismiss the Count on those grounds, and turns to the more serious

---

³This confusion appears to stem from the fact that Section 12 of the 1933 Securities Act is not codified at 12 U.S.C., but at 15 U.S.C. However, Plaintiffs did clearly cite to 15 U.S.C.

6

issues with Plaintiffs' Second Amended Complaint.

First, Defendants argue that Plaintiffs lack standing to recover under Plaintiffs' remaining Counts, Three through Seven. Specifically, Defendants attack Count Three (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962, 1964(c)) by quoting this court's statement in response to Plaintiffs' First Amended Complaint that "shareholders of corporations do not have standing to recover under RICO statutes for the corporation's injuries." Plaintiffs respond by arguing that their claims are not derivative of Sci-Tech's injuries, but rather that they suffered a loss as individual investors because they were induced to invest by means of Defendants' false representations.

Whether Plaintiffs' claims are in fact derivative or direct claims is a crucial issue in this case. Defendants maintain that Plaintiffs' claims are based entirely on a loss in value of their investment in Sci-Tech, which would make the Plaintiffs' damages an indirect result of injury to the corporation, thus barring their claim under RICO and potentially other Counts. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996)("Where the shareholder's injury resulted directly from an injury to the corporation, but only indirectly from the harm the wrongdoer wreaked upon the corporation, the RICO claim belongs to the corporation, and not the shareholder."); *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990)("Shareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation."). However, Plaintiffs maintain that their loss is not due to the fact that their investment returns have diminished, but rather that they were wrongfully induced to invest by Defendants in the first instance.

7

To the extent the Plaintiffs can demonstrate that they have a direct action to enforce their rights as individual investors, rather than asserting losses derivative from alleged injuries to the corporation, Defendants' objections to standing on this basis and their subsequent Motion to Dismiss have no merit. Plaintiffs argue that their Second Amended Complaint does demonstrate a direct cause of action rather than a derivative complaint because Defendants persuaded Plaintiffs to invest in a company by concealing the fact that the company's most valuable assets, the patents, were not actually held by the company, but instead belonged to the Defendants. Defendants counter by listing allegations in Plaintiffs' Complaint that ring of a derivative action rather than a direct action. For example, they cite Plaintiffs' Second Amended Complaint, Paragraph 29, which states, "Vince and Patricia Tylman co-trustees did not assign patents to Sci-Tech as promised."

While it is true that Plaintiffs have allowed portions of a derivative action to seep into their Second Amended Complaint, as in Paragraph 29, this court finds that this is not necessarily fatal to Plaintiffs' Complaint because Defendants' characterization of Plaintiffs' loss as a mere alleged failure of Vince to transfer patents to Sci-Tech is inaccurate. It appears to this court that Plaintiffs have also alleged direct and distinct injuries to themselves as investors. Specifically, they allege they were fraudulently deprived of full information regarding the nature of their investments by Defendants, and that they were ergo fraudulently induced into giving their money to Defendants. These are allegations distinct from any cause of action that Sci-Tech may have. Thus, a motion to dismiss on the grounds that Plaintiffs lack standing to sue based on the derivative nature of their claims fails. Defendants' Motion to Dismiss Count Three is denied. Because Defendants make the same narrow argument in regards to the remaining Counts, Four

through Seven, the Motion to Dismiss these Counts for lack of standing is denied as well.

Finally, Defendants make one last effort to Dismiss Plaintiffs' entire Complaint by arguing that Plaintiffs failed to allege any proximate cause between any damages suffered by investors and any act or omission of any Defendant. To the contrary, Plaintiffs do allege that Defendants' omission about the true ownership of the patents caused them to be fraudulently separated from their money. It is enough to allege the wrong done and leave the particulars to the later steps of litigation. *See Brownlee v. Connie*, 957 F.2d 353, 354 (7th Cir. 1992)(so-called "conclusory" statement of claim may be sufficient if complaint outlines the law claimed to be violated and connects defendants with alleged violation). Therefore, Defendants' Motion to Dismiss on the grounds of proximate cause is denied.

### B. Motion to Strike

Defendants argue that Plaintiffs' Complaint fails to comply with the pleading requirements of the Federal Rules of Civil Procedure. This court agreed with Defendants in their previous Motion to Dismiss Plaintiffs' First Amended Complaint. Specifically, this court found that (1) Plaintiffs' conspiracy count failed to allege any wrongdoing as to one or all the Defendants, (2) Plaintiffs failed to plead with particularity under Rule 9(b) their Securities Fraud Allegations, (3) Plaintiffs failed to provide proper statutory authority, and finally, (4) the court warned Plaintiffs that derivative injuries were not enough to entitle them to standing in RICO claims.

Each of the court's concerns have been addressed in Plaintiffs' Second Amended Complaint. First, Plaintiffs dropped their conspiracy count. Second, Plaintiffs added a section to their Securities Fraud Counts in which each Plaintiff specifically alleged the fraudulent

misrepresentations/omissions made to them by Defendants. Third, the court took it upon itself *infra* to address the parties' citation problems, and thus, after the Plaintiffs amend their complaint, proper statutory authority will no longer be an issue. Finally, Plaintiffs' Second Amended Complaint established to the court's satisfaction that Plaintiff alleged direct injuries in their complaint, not merely derivative claims.

While the court agrees with Defendant that Plaintiffs' Complaint contains more allegations than necessary, the court does not find that this results in an incomprehensible presentation of Plaintiffs' claim. Thus, the court does not find the surplus allegations fatal to Plaintiffs' Complaint. *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 819-21 (7th Cir. 2001)(district court abused its discretion in dismissing complaint that was sufficient to put defendant on notice merely because complaint also contained superfluous matter); *Bennett v. Schmidt*, 153 F.3d 516, 517-518 (7th Cir. 1998)(although complaint was longer than model complaints, complaint was intelligible and gave notice of claim for relief). Plaintiffs' wisdom in pleading beyond the detail required by notice pleading is debatable, but this could just as well work to Defendants' favor.

Plaintiffs have cured the deficiencies in their First Amended Complaint. Additionally, Plaintiffs outlined violations of the statutes on which they rely and connected their complaints to the Defendants. Thus, Defendants' Motion to Strike Plaintiffs' Second Amended Complaint for violations of the pleading requirements of the Federal Rules of Civil Procedure is denied.

C.  **Plaintiffs Lanning and Magdiarz**

As to Defendants' prayer that Plaintiffs Lanning and Magdiarz be dismissed with prejudice from the suit for failure to be named in Plaintiffs' Second Amended Complaint, the

court states that all parties not named in Plaintiffs' Amended Complaint are not parties to the stated action. *See* Fed. R. Civ. P. 21.

## Conclusion

For the foregoing reasons, Defendants' Motion to Strike is denied and Defendants' Motion to Dismiss is denied in part and granted in part. Plaintiffs are given seven days to file an amended complaint containing correct citations, while Defendants are directed to *answer* Plaintiffs' Complaint within twenty-one days thereafter.

ENTER:

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

DATE: 10/13/04